I'm clerk called cage. Morning. They please the court Council. My name is Tom Perales and I represent the defendant, Deontay Moore. Mr. Moore has brought this appeal from his And that was a minimum class X felony term in this case due to the use of a gun when Deontay committed the armed robbery. Now three issues are raised in the briefs, all of which have as a central focus the fact that Deontay was 13 years old at the time of the offense. So obviously the 21 year sentence could only be imposed on an adult offender. And our primary contention in the appeal is that Deontay should not have been removed from the juvenile court system and allowed to be prosecuted as an adult. May I interject? Sure. What was the nature of the underlying charge in the juvenile petition? The charge was based on Deontay's commission of an armed robbery. Do you know what the statutory section is? Yes, it was section 18 to A2. A, no subsection 2 in the juvenile petition. Oh, I wrote my notes wrong. Okay, they left out the fact that it was under the firearm subsection. And they didn't allege that it was under the dangerous weapons subsection. So my question to you is, if I'm right, if it's an A alone, can they upgrade the offense after it's been transferred to adult court? And if you don't have an answer. Well, they have to file an adult charging instrument. They secured an indictment. Are you looking for a more serious offense than is underlying the juvenile petition? I have no answer to that. Thank you. Go ahead with your argument. Okay. All right, so the first issue we're asking for this court to reverse the transfer order that Judge Fredrickson entered, granting the state permission to prosecute this as an adult offense. Was there any evidence in this case when there was a transfer to adult court about the advantages of treatment within the juvenile system, facilities, programs available in the juvenile system? Most of the discussion at the transfer hearing on those factors, and I italicized them in the brief, were rather cursory. It was more of a, I would say, conclusory position of the state that we've tried, and he's obviously not complying with probation, so nothing's going to work for him. Probation is a substantially different essence than incarceration. Certainly, certainly. The intervention permitted by an indeterminate disposition committing the minor until possibly he's 21 years old, and that's part of my argument, would allow for a much better prospect of rehabilitation. Essentially, what I think the outcome of this transfer hearing was, was the state was throwing up its hands with this minor and giving up on him too quickly, and the judgment along with that. Well, when you're incarcerated in the juvenile court system, there are other programs. It's not the same as the DOC is. Correct, correct. It's designed specifically, I mean, to try and rehabilitate and uplift these minors to becoming functional members of society. Because they are going to be adults in society no later than when they reach 21 years old. So, you know, the whole point of the argument that this transfer was really cutting short the opportunities for Deontay is that, and even the constitutional issues to the extent they intertwine, is that the sending him off to do an adult sentence, which will require him to spend time with adult offenders, probably as soon as he's 17 or 18 years old, leads to a more likely life of crime. And that's part of my contention that the factors were not seriously contemplated at the transfer. I mean, there was no discussion of the difference between the possible punishment in the adult world versus the juvenile world. No, Your Honor. In fact, that is something that I actually wrote down a quote from the hearing. The prosecuting attorney got to that factor in his rundown of the statutory transfer factors and said, when weighing the adequacy of punishment as an adult or as a juvenile, this is the quote, I don't think we even have to guess with respect to this minor what is more appropriate. That's the extent of the discussion of the adequacy of the difference. There's also, during the motion to vacate the transfer that was presented to another judge, the prosecutor was not Mr. Wilhelm, but Ms. Murliston at that point. And she argued to the judge in support of denying the motion. There's a wide range of sentencing alternatives here. She specifically stated six to 30 years. That's correct, Your Honor. And that's where I was going with the intertwining or the way the constitutional issue, I think, is interwoven with the transfer decision. And that is- When you address that, would you also address Ms. Murliston's remarks at sentencing, that the state's position was six years was an appropriate sentence. But they were handcuffed and they had to recommend 21. Certainly. So I'd like you to address in your remarks, the court has to consider whether the minor can be rehabilitated in the juvenile court system before they reach majority. And if the state's position at sentencing is six years was appropriate, 13 plus 6 is 19, it would be less than 21 years. I just, I have a real problem with the way this developed. Well, as do I. And the primary problem, I know it's not a statutory factor. And the state has gone to lengths to point that out in its brief. But the severe sentencing consequences was a factor under People v. Clark at the very first hearing, the transfer hearing in front of Judge Frederickson. Now, on one page of the state's brief, I have to point this out, that my opponent has said that Judge Frederickson, at the hearing on the motion to transfer, quote, was informed that defendant would have to serve an extended term or extended sentences, to quote, if convicted. And that's at page 19. Well, that's a complete stretch. There was no mention of the mandatory 15-year gun enhancement following Deontay into the criminal courts. There were two references, one of which you just mentioned, Justice Wright, between the transfer hearing and the motion to vacate, which was later presented in front of Judge Shadid with new prosecuting counsel. And the first mention was by defense counsel trying to keep Deontay from being transferred out of the juvenile court, saying he faces several years if convicted as an adult. And then the quote is, more if the state would seek to enhance. That's that supplemental record, page 83. And then at the later hearing, which has already been covered, they were bringing up what the possible sentencing consequences for Deontay was if Judge Shadid refuses to vacate Judge Frederickson's earlier transfer order. And the state made a point of saying there is this wide Class X sentencing range of 6 to 30 years. Well, People v. Clark covers this, I think. I understand Clark was a double homicide case where the ramifications were much more extreme. The minor was going to face, if convicted, a mandatory natural life without possibility of parole. And on the other hand, if left in the juvenile court system, incarceration that could not pass his 21st birthday. The point is, there were two extremes. And the court said, where the record didn't show that the judge knew the extreme, the high-end extreme, a new transfer hearing needed to be held. And that point is applicable to this case. There was an extreme. Because the judge didn't know the low-end extreme. He didn't know either end. I mean, there was no mention of the fact that this was a 15 plus 6 minimum or as much as 45 years. So, yes, I would say the low end is a little more critical to know. There doesn't appear to be any discussion in the record about a 15-year mandatory enhancement. Until the sentencing hearing. Until the sentencing hearing. That's correct. There was no discussion of that in the transfer or in the reconsideration of the transfer. Correct. And worse yet, there was a refutation at the motion to abate Kate. A refutation by implicitly saying, implicitly refuting that by saying it's a 6- to 30-year case. Which it would be if it was charged as a violation of 8-1 based on a dangerous weapon alone. Yes. And I understand this panel actually was the court that decided Denarius Kelly. And I'm familiar with that Rule 23 order. And there was an argument about constructive amendment. And apparently defense counsel at the transfer hearing in my case was buying into that theory too. Because she pointed out this could be more than 6 if the state seeks to enhance. So, it would appear that maybe even local counsel in Peoria was operating under an impression that, Hey, we have broad negotiation powers here. If we want, we can make this 6. But then again, at the sentencing hearing, the same prosecutor is saying our hands are tied. So, to me, this seems like a bit of a blind side. Like, you know, don't worry, Judge. This is going to be 6-to-30, 6-to-30. Judge, we would have been happy with 6. But look, you know, the 15-year add-on. Who knew? Clark was decided in 1987. And the Juvenile Court Act was amended, I think, in 1988. And so some of the transfer considerations that were applicable in Clark may not now be applicable in this case. Do you still think it is good law? Oh, absolutely. Absolutely. I mean, you can see it fitting within several of the subsection provisions. In particular, the adequacy. I think it falls under the ambit of adequacy of the penalty in the juvenile system or the adult system. But it's a judicial factor that, to the extent that there wasn't any specific factor that it could be pigeonholed into back in the day Clark was decided, and yet it was the controlling factor in that decision, it should be the controlling factor today. The trial court is allowed, under the current version of the transfer statute, to more heavily weigh two factors, the seriousness of the offense and the minor's criminal record. The trial court did concentrate on those two factors. Is the remedy here to remand with directions to consider whether the juvenile court punishment is adequate to protect society and rehabilitate this minor? Or is the remedy to just vacate or send it back outright without allowing the court to reconsider? I would like the latter. But considering the standard of review, I haven't asked for that in my brief because the standard of review pays deference to the trial court. And I think we have shown that the trial court abused his discretion, in particular by not addressing all the factors, and especially the mandatory sentencing consequence. You certainly have the power. I'll give you two minutes. Thank you. Under, I think, Rule 615, to just go ahead and say this is reversed and we've made the determination ourselves that this should have not been transferred and he should be kept in the juvenile system. That would more sound like a de novo action. And I certainly agree with directions. More sound like a de novo. It really is a de novo. Well, that is exactly right, Your Honor. And so I'm trying to not ask for more than I think the law really would support. I think you can instruct or direct the court to consider the factors that it obviously did not consider and make a new decision. And then if it doesn't go well for Deontay, it wastes a little judicial resources because we'll be back. Okay. Well, here's the problem that I have with that. We've got a juvenile petition that seems to allege a violation under a statute that doesn't exist. It's an 11, an 18-2 subparagraph A. A. Which was repealed. I understand. I'm not familiar with the hybrid charging argument. But I think that's taken care of by remanding for the new transfer hearing because we've gone back earlier to a point than the indictment existed at that point. The indictment's okay. The juvenile petition is not. The indictment's okay. The indictment is 18-2A2. The petition is 18-2A only, which is the old 1998 language that was repealed and the new act became effective in 2000. I'll assure this court that I will be in communication with the attorney who- So we can remain with directions to reexamine the nature of the petition and to conduct a new transfer hearing if necessary. Absolutely. I'll let that be the clause unless there are any further questions. Thank you, counsel. Thank you, Your Honor. Counsel? Can you start by addressing my question of whether you can upgrade the offense after the transfer? I haven't researched that specific question as it relates to this instance. I know we've got an indictment later. That, of course, puts the defendant on notice of the charge, including the mandatory sentencing enhancement. But I don't have an answer for you, unfortunately, Your Honor. Because this is a discretionary transfer and the juvenile court should be reluctant to give up its primary jurisdiction with a 13-year-old. And so my concern is that the judge really needed to know what the underlying charge was before it moved up. And the underlying charge seems to be based on a statute that did not exist in 2009. I understand your concern about the actual charging instrument. But the juvenile judge received the information specifically what the act was, the armed robbery with a gun. So he knew the facts of the case. Even if that charging instrument was inappropriately charged, there was a clerical error. Who knows? The judge knew exactly what the scenario was in this particular case. He knew that it was an armed robbery with a gun. So there was no surprise to anyone in the courtroom. In fairness to the state, they did a wonderful job of proving it was a deadly weapon, better than the state did during the stipulated bench trial. Because in the juvenile court, the trial judge learned that the firearm had been tested by the crime lab. And it was palpable in the criminal court. In the stipulated trial, the judge didn't hear any of that. But the judge had the file, and he heard the motion on the transfer, the objection to the transfer. So the trial judge would have had that objection. Was it a constitutional violation only? Well, it presumably had the whole file. Regardless of the narrowness of that constitutional argument, the trial judge would have had the juvenile file to refer to in this particular case. So I don't think the judge was acting out of ignorance of any of the proceedings below. And likewise, I don't think the juvenile judge was ignorant as to the actual charge that would be filed once the juvenile went to the criminal, of course, because he knew the armed robbery with the firearm. Well, if he knew that, then why did he accept the prosecutor's argument that there's a wide range of punishment, 6 to 30? Well, that was the trial judge. When we were speaking at that, the juvenile judge was not given that comment. With the juvenile judge, I will be straight up right now to say that I did not find anywhere in the record where anyone said there's a 15-year enhancement involved in this. I'm not going to argue that that happened because I looked for it, obviously, and it was not there. What we do have, of course, is that the in-closing argument at the juvenile hearing, defense counsel did say there was a term of years involved and there was an enhanced sentence. But he did not say, yeah, it's going to be an extra 15 on the base minimum. Okay? And, of course, we do have the presumption, and the Cooks Court and First District reiterated that there's a presumption that the judges know the sentencing alternatives and that the record has to show the contrary. We don't have anything in the record that says that the juvenile judge didn't have a clue what the enhancement might be. Only that the prosecutor did. Well, possibly the prosecutor. You know, I can't speak to the prosecutor's mind. That would be supposition. I apologize, but I won't go there because I simply don't know what was in the prosecutor's mind at that point. The prosecutor made the judge aware there was 6 to 30. Well, that was, again, later in the motion, not in the transfer hearing. Right. And there was some discussion earlier here about not enough information was provided or basically no information was provided about rehabilitation and services provided and the lack of. Well, I disagree totally with that because at the hearing on the motion to transfer, the juvenile judge reviewed the defendant's file in a prior domestic battery case where he tried to strangle his own grandmother. He noted the judge said that the defendant had been given probation and the services of probation. He used that specific term. And the record the defendant has provided on appeal does not provide that particular file in the domestic battery. However, it does contain the PSI report that the trial judge had prior to sentencing ultimately in the criminal court. And that PSI report clearly shows that prior to committing the offense, this defendant had six convictions for petty offenses. But we have to focus on what the juvenile court judge knew, not what occurred later. He had the file, but the defendant did not put that file in. He didn't have a resentence report in the file when he was deciding to transfer. That's true. But that would assume that the juvenile judge did not have any record whatsoever of the defendant's juvenile record in detention for his domestic battery and such. And I would respectfully disagree with that supposition if that's in fact what's going here. But the juvenile could have been incarcerated in the juvenile court system. Well, obviously. And this is a juvenile judge. He had the juvenile file for that domestic battery. What you're talking about was like a probation-like or local detention. Probably wouldn't happen with this one. Isn't that substantially different than an incarcerated juvenile? Well, no. I mean, he's walking along the streets and forgets or doesn't or blows off an appointment with a juvenile officer. That's a lot different than sitting in a cell and somebody coming and saying, I'm not sure if I'm following your line, sir. No, I mean, if he's out on probation, that doesn't tell me and doesn't follow the procedures correctly. That's a wholly different story than what might happen and what undoubtedly will happen when he's incarcerated. Well, we do have a situation where he was detained in this case for a period of six months in the juvenile facility. But there's no evidence of what happened, what didn't happen. Well, in that case, there were actually detention incident reports that detailed 31 incidents of disruptive behavior, threats against the detention staff, and the defendant was involved in fights. And this was all during the six-month period. We're not dealing with that. What we're talking about here is services available. But that's showing that he's not participating in the services in his detention. He was disruptive. He was violent. What detention facility was he in? All I know that it was a juvenile detention facility. There's like probation-like factors. Then there's the local detention system in the county. I believe it was a county, if my memory serves me correctly. That's what I understood. It was a county detention center. Yes. Now, that's different than going to the juvenile incarceration. Certainly. But they don't- Yes, Your Honor, I agree. Apologize for interrupting. But they're not just sitting and looking at the walls all day long in any juvenile facility. Well, I mean, I was a chief judge for 13 years, and I'm keenly aware of what we're able to offer to detention centers. We had one in LaSalle County. But we didn't have the county funds and the operations to have a lot of the kind of services you would like to have for the juveniles in the detention center. Now, the state has more funding and more wherewithal occasionally to have a little bit more support in some of these enhanced incarceration systems, more enhanced than a detention center. I mean, a county detention center, what they're able to offer is limited to what they're able to fund. True. And this was a Peoria County case, and so I believe the funding may have been a little stronger in Peoria than it would be potentially in LaSalle or a smaller county like this. But it always appeared to me that there was maybe more things available if needed at the state centers. Well, certainly. I can't deny that you're most likely accurate about that, Your Honor. And, of course, when he's transferred and is convicted in the criminal courts, he would receive all the services in the juvenile facilities. He would not be, obviously, with the adult population. He'd be in the juvenile- Until he's 21. Right, right. Then he'd be- And as we pointed out in our brief, if he did all the services, stayed clean, got his GED, did all the right things that he was supposed to do, he could be out in just over nine years. And, of course, that would mean that he's serving a limited amount of time, a couple years approximately, in the adult population. And if he's already straightened out his life and he's working hard to keep it that way, most likely, even though he's surrounded by more hardened criminals than an adult population for that shorter period of time, he would continue to work to get out of there and keep his life straight. If he's already had that path of years of working toward that. And, of course, he gets the day-for-day credit and all the other credits and that sort of thing that are applicable to his sentence. We did a whole listing, of course, in the brief of everything that was applied and did the computation. We never know what one individual is going to do, but statistically, the rehabilitation problems are massive, aren't they, when you have juveniles in the adult- I mean, when you have younger people in the adult center and the likelihood of reoffending and so forth. I agree that the adult population is a difficult place for a young offender to be. I don't think there's any argument that could be made that, no, he'll be fine and nobody will give him any problems. I would not presume to go there. Where has he been since September 16, 2009, since the date of sentencing? I'm sorry, what? Where has he been since he was sentenced? He's in the juvenile facilities, is my understanding. In Cure? No, in the state. The criminal would be the DOC juvenile facilities. He's the same place he would be had he been adjudicated as a delinquent? Absolutely, because by statute, he has to be in a juvenile facility. He can't go to the adult population until he gets old enough. Right. If we conclude that the trial judge erred by not considering this factor, and I know your position is that he did properly consider rehabilitation services available, but if we conclude that the trial judge did not, what do you think the remedy should be? Well, if you conclude that he's not, obviously we would need to go back for another transfer hearing. If you say that the transfer hearing itself was ineffective, it was improper, then of course that would be the remedy, to go back and hold a new transfer hearing. So when we have the new transfer hearing, we've got a kid who's been incarcerated somewhere for the last year, year and a half. We don't have the same kid. I can't speak to that, Your Honor. I don't know. Hopefully, because he's been receiving treatment and rehabilitation services, he would be a better kid than he was when he went in. All right. That's a good point. Now, I do have – we talked about the Clark Court's decision, and that's been a big deal about the sentencing, obviously, issue involved in this. And the Clark Court is – I mean, that case is distinguishable because we had a 14-year-old who committed a double murder and got a mandatory life sentence. All right. The Clark Court stated that no party had any awareness that his conviction would result in a life sentence. There had been no consideration of how the defendant in that case or society would benefit from his life sentence. There had been no investigation into defendant's history or the potential for rehabilitation. And the judge did not investigate the services that would be available to the defendant if he was sentenced to the juvenile detention services. And obviously, the only similarity between Clark and this case is that both defendants were subject to discretionary transfer as opposed to – well, let me just keep it that they were subject to discretionary transfer. All the other factors that were not considered in Clark were considered here. And so I contend that the Clark case is not applicable in this particular situation. You don't think Clark added a factor for us to look at? No, sir, I don't know. And I think it was specific to the facts of that case and other cases that are similar to those facts where the factors were not considered and we're dealing with an extreme sentence like life sentence. In case – we don't have death here anymore, but there are other cases, of course, where you would get that death sentence that would be similar to the Clark. But this is not that case. Factors were considered. The judge considered probably all the factors. He went through the list of every single factor that is required and stated his conclusions on there. And he had information. He got testimony from the mother talking about how the child had ADHD, had medication. She took him off the medication. He was given anger management classes. He refused to participate in them. He had drug and alcohol issues. He was hanging out with gang members. He was kicked out of school for throwing gang signs, and then he refused to go back. He ran away from home. You know, all this constant problem. Some of those facts you're referring to were contained in the pre-sentence investigation and not available to the juvenile court judge. Actually, this testimony was at the juvenile hearing, the mother's testimony about all these things. Not that he got kicked out of school for flashing gang signs. I believe that was there, too. Potentially I could be in error, and I apologize if I am. So you say it's degrees of difference. In other words, in Clark it was natural life. Yes, sir. And here it's 21 years for a 13-year-old. But at the same time in Clark, all the factors, there was nothing taught in Clark where they discussed the rehabilitation factors at all. They didn't discuss the defendant's history at all. They knew nothing, basically, and this defendant in Clark got a life sentence. So none of the procedures were followed, whereas in this case, the juvenile judge clearly went through the list of every single factor and said, you know, I've considered this, I've considered this, I've considered this, and right down the line, if it didn't apply, he said it doesn't apply. So are you saying that Clark doesn't add a factor, but if it does, the trial court considered it anyway? Like a fallback position, you said? Or am I misinterpreting what you're saying? As far as in the juvenile hearing, the transfer hearing, I don't believe that Clark does add a factor, no, sir. You're referring to that, but you also seem to say that even if it does, the trial court considered it. Is that what you're saying? No, well, yes, I do believe that he considered sentencing because- Should we decide that Clark applies here, the trial court considered it anyway? Yes, in our briefing, it certainly did say that even if Clark does apply, he did consider sentencing. He may not, as I've said, consider that specific 15-year enhancement, but he did consider that he would receive an enhanced sentence. And, of course, I'm not going to presume that the juvenile judge did not have any clue about the sentencing involved. My time is up, Your Honor, so if you have no more questions. Thank you. Thank you. Thank you, counsel. The court will take this case under advisement and we'll have a panel change. We will rule with dispatch. Thank you.